UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
CASE NO. 11-20349-CR-UNGARO

UNITED STATES OF AMERICA,

v.

FERNANDO VICENTE MARULANDA-TRUJILLO,

    Defendant.
_____/

## GOVERNMENT'S RESPONSE TO DEFENDANT'S MOTION FOR COMPASSIONATE RELEASE

The United States of America, by and through the undersigned Assistant United States Attorneys, hereby responds to defendant Fernando Vicente Marulanda-Trujillo's Motion for Compassionate Release (the "Motion") (DE 76). The Defendant has failed to meet the exhaustion requirement under Section 3582(c)(1)(A) and, furthermore, has provided no compelling reason for his release after serving just 99 months of his 210-month sentence. Accordingly, the Court should deny his motion for immediate release.

## BACKGROUND AND ARGUMENT SUMMARY

On May 19, 2011, the Defendant was charged, by indictment, with conspiracy to distribute five kilograms or more of cocaine, knowing that the controlled substance would be unlawfully imported illegally into the United States (DE 1). The Defendant was transferred to fugitive status on June 30, 2011, and was eventually arrested at Miami International Airport on January 12, 2012 (DE 7; DE 14). The United States submitted its discovery response on January 27, 2012 (DE 13).[1]

---

[1] The Defendant asserts that he waived discovery in this case as part of his cooperation efforts. While the Defendant may have agreed to receive limited discovery due to his attempt at gaining cooperation credit, the record indicates he received at least some materials pertaining to the case.

On February 28, 2012, the Defendant pleaded guilty to the sole count in the Indictment. As part of his plea, the Defendant acknowledged that he had participated as an investor in a multi-national drug trafficking conspiracy. He admitted that he had an ownership interest in a 500-kilogram load of cocaine that had been sent from Venezuela to Mexico in a cargo container (Presentence Investigation Report ("PSI") at ¶ 11).

On July 20, 2012, the Court sentenced the Defendant to 210 months' imprisonment, the top of the guidelines range (DE 70). During the sentencing hearing, the United States opposed safety valve eligibility because the Defendant had misrepresented the extent of his involvement in drug trafficking operations and instructed a potential witness to lie on his behalf (DE 43: 11-13).[2] The government argued that the Defendant's attempt at cooperation while concealing information about his own conduct "threaten[ed] to undermine the entire system" (DE 43: 14). The Court declined to apply safety valve and sentenced the Defendant to 210 months' imprisonment (DE 70). To date, the Defendant has served approximately 99 months and is scheduled to be released on December 11, 2026.[3]

The Defendant unsuccessfully appealed his conviction and sentence (DE 50). He then filed a motion to reduce his sentence (DE 52), which the Court denied on June 10, 2016 (DE 54). The Defendant filed a second motion to reduce his sentence on June 2, 2019, which was based on the same health issues noted in the present motion (DE 57). On August 13, 2019, the Court denied the Defendant's renewed motion (DE 61).

---

[2] In an effort to convince the United States and the Court of his truthfulness, the Defendant took a polygraph test. The test ultimately undercut his claim, however, because he failed the two questions related to (1) his role in the conspiracy; and (2) whether he had directed another person to lie to authorities on his behalf (DE 43: 4, 13).

[3] *See* BOP Inmate Locator, https://www.bop.gov/inmateloc/. Based on the release date listed on the BOP website (December 11, 2026), which is 178 months from the date of arrest (January 12, 2012), the Defendant is already projected to receive a substantial reduction to his sentence due to good-time credits.

On April 24, 2020, the Defendant filed his third motion for early termination of his sentence (DE 62). The current Motion, largely echoing the arguments under the previous Section 3582 motion, claims that "extraordinary and compelling reasons" warrant his immediate release from his current detention facility, Fort Dix FCI. The Defendant has not met the exhaustion requirement under Section 3582(c)(1)(A) because he has failed to file an administrative request. Even if the Defendant had met the exhaustion requirement, however, he fits none of the circumstances outlined in the Sentencing Guidelines' policy statement and is therefore not entitled to release. Furthermore, as detailed below, Fort Dix FCI has implemented a number of operational changes to ensure the safety of the inmate population. Accordingly, the Court should deny the Defendant's request for immediate release.

## ARGUMENT

### I. Defendant has failed to exhaust administrative remedies as required by the First Step Act, and waiver of the administrative exhaustion requirement is not appropriate.

Because the Defendant has failed to exhaust his administrative remedies, the Court must deny the Motion. The First Step Act provides that a court may not modify a term of imprisonment in all but a narrow set of cases. One such case is where the Director for the Bureau of Prisons ("BOP") moves the court to do so. Alternatively, a defendant may make such a motion, but only "after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request." 18 U.S.C. § 3582(c)(1)(A).

To date, the Defendant has submitted no request to the BOP for compassionate release. Instead, he argues that "this Honorable Court may waive the requirement than an inmate exhaust all administrative remedies," and cites *Washington v. Barr*, 925 F.3d 109, 118 (2d Cir. 2019), as

support for this counterintuitive proposition (Motion at 15). The Defendant overlooks an important distinction between the *Washington* case and the present matter: *Washington* involved *judicially-created* exhaustion requirements under the Controlled Substances Act, whereas Section 3582(c)(1)(A)'s exhaustion prerequisite is congressionally imposed. This is a key difference, as the Supreme Court concluded in *Ross v. Blake*, 136 S. Ct. 1850 (2016). In *Ross*, the Court rejected a judicially created "special circumstances" exception to the Prison Litigation Reform Act's exhaustion requirement, concluding that the "mandatory language" in the statutory text "means a court may not excuse a failure to exhaust," even to accommodate exceptional circumstances. *Ross*, 136 S. Ct. at 1855-56.

Consistent with these principles, courts evaluating motions for compassionate release have concluded that, despite the COVID-19 pandemic, the court lacks authority to grant relief under 3583(c)(1)(A) when the defendant has not satisfied the exhaustion requirement. *See, e.g.*, *United States v. Zywotko*, No. 219CR113FTM60NPM, 2020 WL 1492900, at *1 (M.D. Fla. Mar. 27, 2020); *United States v. Eberhart*, 2020 WL 145075, *2 (N.D. Cal. Mar. 25, 2020); *United States v. Garza*, No. 18-CR-1745-BAS, 2020 U.S. Dist. LEXIS 54228, at *2 (S.D. Cal. Mar. 27, 2020); *United States v. Oliver*, No. JKB-16-0485, 2020 U.S. Dist. LEXIS 54325, at *2 (D. Md. Mar. 27, 2020). Because the Defendant has failed to appeal the denial of his request, his Motion must be denied as untimely.

**II.     Defendant does not qualify for relief under Section 3583(c)(1)(A).**

Section 3582(c)(1)(A) permits the court to modify a term of imprisonment "if, after considering the factors set forth in 18 U.S.C § 3553(a)," it finds that "extraordinary and compelling reasons warrant such a reduction," provided that "such a reduction is consistent with applicable policy statements issued by the Sentencing Commission." 18 U.S.C. § 3582(c)(1)(A). The

4

Defendant bears the burden of establishing that compassionate release is warranted. *Cf. United States v. Hamilton*, 715 F.3d 328, 337 (11th Cir. 2013). The relevant policy statements issued by the Sentencing Commission are set forth in Application Note 1 to the U.S. Sentencing Guidelines Manual, which explains the circumstances in which "extraordinary and compelling reasons" exist. U.S.S.G. § 1B1.13, app. n. 1. None of those circumstances apply here. The Defendant is not suffering from a terminal illness or from a condition or cognitive impairment that substantially diminishes his ability to provide self-care. *Id.* app. n. 1(A). Nor is the Defendant 65 or older and experiencing "serious deterioration in physical or mental health because of the aging process." *Id*. app. n. 1(B). The Defendant's family circumstances likewise do not require his release. *Id*. app. n. 1(C). Finally, the BOP has not determined that alternative compelling reasons exist warranting a sentence reduction. *Id*. app. n. 1(D).

The Defendant acknowledges that he fits none of these categories, instead claiming that the Court may grant the Motion under the "alternative compelling reason" prong, despite the fact that the BOP has made no such finding. He claims that the Sentencing Guidelines' policy statement is outdated and urges this Court to ignore the Sentencing Commission's express definition. This reasoning is faulty for several reasons. First, if Congress believes that the Policy Statement is outdated, it is free to direct the Commission to revise this language. In the sixteen months since the FSA's implementation, Congress has done no such thing. As several courts to address this argument have concluded, there is no reason to ignore relevant Sentencing Commission guidance simply because they pre-date certain statutory amendments. *See, e.g.*, *United States v. Heromin*, 2019 WL 2411311, at *2 (M.D. Fla. June 7, 2019); *United States v. Shields*, No. 12-CR-00410-BLF-1, 2019 WL 2359231, at *4 (N.D. Cal. June 4, 2019); *United States v. Overcash*, No. 3:15-CR-263-FDW-1, 2019 WL 1472104, at *2 (W.D.N.C. Apr. 3, 2019).

Second, and perhaps more importantly, *this* Court already rejected this exact argument in the Defendant's prior § 3582 motion (DE 61: 4 ("Movant has not cited, and the Court has not discovered, any authority for the proposition that the Court may disregard guidance provided by the Sentencing Commission where it appears that such guidance has not kept pace with statutory amendments.")).

But even if this Court were to reconsider its earlier ruling and evaluate the Defendant's Motion under the "other reasons" factor (D), discretion to identify other extraordinary and compelling reasons should be comparable or analogous to what the Commission has already articulated.  *See United States v. Fox*, No. 2:14-CR-03-DBH, 2019 WL 3046086, at *3 (D. Me. July 11, 2019) (concluding defendant's petition, which was based on his failure to receive emergency eye surgery and subsequent partial loss of vision, as well as his ineligibility to benefit from a non-retroactive reduction of sentences for certain crimes, did not constitute "extraordinary and compelling reasons" for relief).  The Defendant's claimed health issues, however, do not compare to the level of extreme impairment contemplated by the existing policy statement (*e.g.*, terminal illness, illness that substantially impairs self-care, serious physical or mental deterioration coupled with prolonged imprisonment, and exceptional immediate family issues).  In fact, in the Defendant's latest physical exam, which took place in March 2020, it was noted that he reported no chest pain and had gained weight in the months preceding the exam.[4]

Finally, the Section 3553(a) factors militate against terminating the Defendant's sentence nearly six years ahead of schedule.  At the time of sentencing, the nature and circumstances of the offense, history and characteristics of the defendant, need to ensure adequate punishment, deterrence, community protection, and the need to avoid unwarranted sentencing disparity,

---

[4] For privacy reasons, the Defendant's medical record will not be attached to this response.  The medical report, however, is available at the Court's request.

warranted a sentence of 210 months' imprisonment. The Defendant has served less than half of that sentence, and has not provided any basis, other than his underlying health conditions, to persuade the Court that its consideration of these factors should be modified. Moreover, the need to avoid unwarranted sentencing disparities would not be served by immediate release, given that sentencing disparities would certainly arise if the Defendant were to serve less than the mandatory-minimum sentence for his crime.

For the foregoing reasons, even if the Court were to decide the Defendant's motion on the merits, relief under 3582(c)(1)(A)(i) is not appropriate. *See Leitman v. Dobbs*, 2019 U.S. Dist. LEXIS 132864, at *6-7 (S.D. Fla. Aug. 5, 2019) (finding petitioner ineligible for relief under Section 3582(c)(1)(A)(i) where petitioner did not allege he was suffering from the conditions outlined in Application Note 1); *Ayala v. Dobbs*, No. 19-20729-CV-COOKE, 2019 U.S. Dist. LEXIS 59188, at *8 (S.D. Fla. Apr. 4, 2019) (same).

### III. Conditions of Defendant's detention adequately safeguard his health.

As of May 1, 2020, Fort Dix FCI, the institution where the Defendant is incarcerated, has reported 27 inmates and 3 staff members, there have been no casualties resulting from the virus.[5] Furthermore, to prevent any future risk among the inmate population, Fort Dix FCI has taken the following measures:

- Social visits suspended for until further notice,[6] while increasing the amount of time inmates receive for telephone calls;

- Limitations on inmate movement, including suspension of inmate facility transfers for 30 days;

---

[5] Bureau of Prisons, Covid-19 Index, https://www.bop.gov/coronavirus/index.jsp (April 30, 2020).
[6] As reported on Facility's official website, *see* https://www.bop.gov/locations/institutions/ftd/.

- Suspension of staff travel for 30 days;

- Enhanced health screening of staff; and

- Enhanced screening of inmates, including quarantine and testing of asymptomatic inmates with exposure risk factors.

Additional measures taken by the Bureau of Prisons Covid-19 are summarized in the following Action Plan: https://www.bop.gov/resources/news/20200313_covid-19.jsp.  In short, Fort Dix FCI has done as much as possible to prevent the transmission of Covid-19.

The Defendant claims that the BOP "has additionally and inexplicably[] reduced Mr. Marulanda Trujillo's commissary amount by ½," which he argues prevents him from purchasing cleaning supplies and leaving him with "barely enough to subsist" (Motion at 4).  This claim is inaccurate.  While the BOP did reduce commissary purchasing, the reason for this measure is to prevent the spread of COVID-19 by reducing the number of transactions conducted on a daily basis.  Nevertheless, inmates are provided hygiene necessities and cleaning supplies.

Finally, the Defendant claims that, should the Court grant his Motion, he could spend fourteen days under home confinement before being deported to his home country.  Preliminarily, this proposal runs contrary to the Court's judgment, which ordered him to surrender to immigration custody immediately upon release from federal custody.  Moreover, the Defendant's proposal violates Section 3582(c)(1)(B), which only permits courts to modify an imposed term of imprisonment, not the method of incarceration, which is determined solely by the Bureau of Prisons. *United States v. Solis*, No. CR 16-015-CG-MU, 2019 WL 2518452, at *3 (S.D. Ala. June 18, 2019)(citing *Tapia v. United States*, 564 U.S. 319, 331 (2011)("[a] sentencing court can recommend that the BOP place an offender in a particular facility or program . . . [b]ut decision making authority rests with the BOP.")).  Accordingly, if released, the Defendant would have to

report to immigration custody.  He has supplied no reasons why immigration custody would be preferable to federal custody, nor explained how those conditions would reduce his risk of contracting the virus relative to those at Fort Dix FCI.  In light of the precautions currently in place at Fort Dix FCI, as described above, it is unlikely that the Defendant could provide such an explanation.

WHEREFORE, the Government respectfully requests that this Court deny the Defendant's motion for compassionate release.

                                        Respectfully submitted,

                                        ARIANA FAJARDO ORSHAN
                                        UNITED STATES ATTORNEY

By:   */s/Yeney Hernandez*
        Yeney Hernandez
        Assistant United States Attorney
        Court ID No. A5502300
        99 N.E. 4th Street, Suite 700
        Miami, FL 33132
        Tel# (305) 961-9277
        Email: yeney.hernandez@usdoj.gov

## **CERTIFICATE OF SERVICE**

**I HEREBY CERTIFY** that on May 1, 2020, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF.

>/s/Yeney Hernandez
>Yeney Hernandez
>Assistant United States Attorney