UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 11-20349-CR-UNGARO

UNITED STATES OF AMERICA,

    Plaintiff,

v.

FERNANDO MARULANDA-TRUJILLO,

    Defendant.
_____/

**REPLY TO THE GOVERNMENT'S RESPONSE AND RELEASE PLAN IN PLACE SHOULD THIS HONORABLE COURT GRANT THE PENDING MOTION FOR <u>COMPASSIONATE RELEASE</u>**

    The Defendant, FERNANDO MARULANDA-TRUJILLO, by and through the undersigned counsel, respectfully files the instant Reply to the Government's Response and Release Plan in Place Should this Honorable Court Grant the Pending Motion for Compassionate Release, and in support thereof, proffer the following facts:

### I.     <u>PROCEDURAL POSTURE:</u>

1.     As of May 6, 2020, the FBOP is reporting a total of forty (40) inmates and three (3) guards who have contracted COVID-19 at FCI Fort Dix, where Mr. MARULANDA-TRUJILLO is currently housed. As of May 6, 2020, the FBOP is reporting a total of 2,100 inmates and 365 staff members who have contracted COVID-19, and a total of 42 inmates who have died after having contracted COVID-19. *See* bop.gov  The latter data does not include the number of inmates who are experiencing symptoms consistent with COVID-19, but who have not been tested, nor do these numbers reflect the inmates who have already been tested because they were displaying symptoms consistent with COVID-19, and who are awaiting the results of their COVID-19 tests. *See* bop.gov

2. On May 4th, 2020, the undersigned requested a brief, three (3) day extension of time to file a Reply to the Government's Response. **(DE 65).**

3. This Honorable Court granted the undersigned's request for a three (3) day extension of time in order to obtain the medical records reflecting Mr. MARULANDA-TRUJILLO's most recent administrative request for compassionate release, the preliminary response from the FBOP, and the FBOP Medical Records reflecting Mr. MARULANDA-TRUJILLO's most recent hospitalization in February, 2020, as well as the Clinical Notes and medical findings from February 2020, which resulted in his February, 2020, hospitalization. **(DE 66).**

4. Attached hereto please find Mr. MARULANDA-TRUJILLO's most recent administrative request for compassionate release, the preliminary response from the FBOP. **(Ex. A).**

5. Unfortunately, as of today's date, Mr. MARULANDA-TRUJILLO has not been provided the additional medical records for the month of February, 2020, as well as the hospital records that were generated at the end of February, 2020, when Mr. MARULANDA-TRUJILLO was hospitalized on an emergency basis.

6. Based upon the government's Response, it appears the government has already obtained Mr. MARULANDA-TRUJILLO's medical records. And, although it is Mr. MARULANDA-TRUJILLO's burden to prove he is entitled to the relief he seeks, given the relief requested herein is time-sensitive, and could quite literally become a matter of life or death at a moment's notice, and since the FBOP at Fort Dix has refused to timely provide Mr. MARULANDA-TRUJILLO with his medical records for February, 2020, including his hospitalization records, the undersigned respectfully requests this Honorable Court to direct the government to produce the medical and hospital records they obtained from FCI Fort Dix for Mr. MARULANDA-TRUJILLO for the

month of February, 2020, if this Honorable Court wishes to review same prior to ruling on the pending Emergency Motion for Compassionate Release.

7. This Honorable Court likewise Ordered Mr. MARULANDA-TRUJILLO to provide this Honorable Court with a detailed release plan setting forth exactly where and with whom Mr. MARULANDA-TRUJILLO would be residing should he be re-sentenced to time-served and released by this Honorable Court. **(DE 66).** Consistent with this Honorable Court's Order, Mr. MARULANDA-TRUJILLO's release plan is set forth *infra.*

8. Also included is a letter of representation by Mr. MARULANDA-TRUJILLO's immigration attorney, Edward Cifuentes, who will be representing Mr. MARULANDA-TRUJILLO on the immigration portion of his case should this Honorable Court grant the pending Motion for Compassionate Release. **(Ex. B).**

## II.   MR. MARULANDA-TRUJILLO'S RELEASE PLAN:

9. In the event this Honorable grants the pending Motion for Compassionate Release, Mr. MARULANDA-TRUJILLO's family have retained the legal services of immigration attorney, Edward Cifuentes, in order to expedite Mr. MARULANDA-TRUJILLO's release from immigration. **(Ex. B)**

10. In order to best provide this Honorable Court with a detailed release plan that includes any eventualities that may occur once Mr. MARULANDA-TRUJILLO is re-sentenced to time served and he is placed in the custody of immigration officials, the undersigned had his paralegal on this matter confer with immigration attorney, Mr. Cifuentes.

11. Mr. Cifuentes has advised that once this Honorable Court signs an order re-sentencing Mr. MARULANDA-TRUJILLO to time served, immigration officials have 72 hours to pick up Mr. MARULANDA-TRUJILLO from the custody of the FBOP. According to attorney Cifuentes,

Immigration officials will typically pick up Mr. MARULANDA from FBOP custody almost immediately.

12. Upon the transfer of Mr. MARULANDA-TRUJILLO'S custody from the FBOP to ICE, Mr. Cifuentes has indicated he will seek the immediate release of Mr. MARULANDA-TRUJILLO. Based upon his most recent experience handling compassionate release cases where the defendant, like Mr. MARULANDA-TRUJILLO, is convicted of a narcotrafficking offense, re-sentenced to time served, and is released from federal custody, Mr. Cifuentes has been able to obtain the release of the defendant from ICE by obtaining an Order of Supervision from the Intensive Supervision Appearance Program (ISAP).

13. ISAP is a program through which ICE releases and supervises an individual subject to deportation while removal is processed. The ISAP program is designed to ensure compliance by the individual the Immigration requirements while on release awaiting removal. Mr. Cifuentes likewise reports that currently the ISAP program allows for home quarantine in order to protect the individual's health. Moreover, as per attorney Cifuentes, the conditions to secure an Order of Supervision vary from posting a bond, to the placement of a GPS ankle monitoring bracelet, or release on the defendant's own recognizance. The decision to set conditions for the order of supervision is determined at the time the individual is in the custody of ICE.

14. Consistent with his practice and experience and Mr. MARULANDA-TRUJILLO's federal record of conviction and dire medical condition, Mr. Cifuentes believes he will be able to secure an Order of Supervision from ICE directing the release of Mr. MARULANDA-TRUJILLO to the Intensive Supervision Appearance Program (ISAP).

15. Upon being released from ICE, Mr. MARULANDA-TRUJILLO will reside with an extended close family friend, Ms. Frida Liliana Rubio, at the following address: 17601 SW 65th

Court, Southwest Ranches, Florida 33331. **(EX. E).** Ms. Frida Liliana Rubio is a United States Citizen, is not a convicted felon and is in no way associated with any of the defendant(s) or events that transpired in Mr. MARULANDA-TRUJILLO's criminal case and which resulted in his federal criminal indictment.**(EX E).**

16.     Upon his release from ICE, Mr. MARULANDA-TRUJILLO will shelter in place at the aforementioned residence of Ms. Frida Liliana Rubio for fourteen (14) days, or until such time that he can self-deport to Colombia, but will not self-deport if the opportunity to do so occurs before the expiration of fourteen (14) days of self-quarantine.

17.     To briefly recap, if Mr. MARULANDA-TRUJILLO is released from the FBOP by Order of this Honorable Court, he will be: (1) picked up by ICE officials from the FBOP withing 72 hours; (2) he will be represented by attorney Edward Cifuentes, Esq. throughout the pendency of the immigration proceedings that will commence once he is in the custody of ICE; (3) Mr. Cifuentes will petition the Immigration Court for Mr. MARULANDA-TRUJILLO's release through an Order of Supervision referring him to the ISAP program; (4) Mr. MARULANDA-TRUJILLO's family will post a bond if required to do so, and/or Mr. MARULANDA-TRUJILLO may otherwise be placed on a GPS ankle monitoring bracelet, or he may be released on his own recognizance; (5) upon his successful release from ICE, Mr. MARULANDA-TRUJILLO will reside with Ms. Frida Liliana Rubio, at: 17601 SW 65th Court, Southwest Ranches, Florida 33331, where he will immediately upon release, and continuously shelter in place for fourteen (14) consecutive days; (6) upon completing his quarantine, Mr. MARULANDA-TRUJILLO will self deport consistent with ICE requirements, once Colombia opens up their borders.

18.     At all times subsequent to his release from FBOP custody, Mr. MARULANDA-TRUJILLO will remain in compliance with any and all immigration requirements, including but not limited to those conditions ser forth in any Order of Supervision issued by ICE.

### III.     **BRIEF REPLY:**

**1. The District Court has Jurisdiction to Hear This Matter Irrespective of Whether or Not Mr. MARULANDA-TRUJILLO Exhausted His Administrative Remedies**

In their response the government maintains this Honorable Court should deny Mr. MARULANDA-TRUJILLO's Motion for Compassionate Release because: (1) the District Court does not have jurisdiction to hear this matter because Mr. MARULANDA-TRUJILLO has not exhausted all of his administrative remedies. The government's position runs contrary to clearly established exceptions to the exhaustion requirement which have been recognized and followed by the Honorable District Court Judges in our District and in our sister Districts throughout the nation.

Specifically, this Honorable Court may waive the requirement that an inmate exhaust all administrative remedies if one of the recognized exceptions to exhaustion applies. *See* Washington v. Barr, 925 F.3d 109, 118 (2d Cir. 2019) (citing McCarthy v. Madigan, 503 U.S. 140, 146–47 (1992)). There are three circumstances where failure to exhaust may be excused—(1) where it would be futile; (2) when the administrative process would be incapable of granting adequate relief; or (3) if pursuing agency review would subject plaintiffs to undue prejudice." Id. All three (3) of these exceptions apply to Mr. MARULANDA-TRUJILLO given that Mr. MARULANDA-TRUJILLO is in the COVID-19 morbid class as per the Centers for Disease Control, and it literally took the Warden approximately 3 months to even respond to Mr. MARULANDA-TRUJILLO's first request for compassionate release. **(See previously filed Ex. 3 and Ex. 4).**

If Mr. MARULANDA-TRUJILLO contracts COVID-19 and dies while he is waiting for the administrative process to be completely exhausted, his pending Motion for Compassionate Release would become futile, the administrative process would be unable to grant relief, and Mr. MARULANDA-TRUJILLO would be subject to undue prejudice.  *See* Washington, 925 F.3d at 120–21; *see also*; Abbey v. Sullivan, 978 F.2d 37, 46 (2d Cir. 1992); New York v. Sullivan, 906 F.2d 910, 918 (2d Cir. 1990).  Requiring Mr. MARULANDA-TRUJILLO to exhaust his administrative remedies—i.e. by either filing an appeal of the denial of his first request for compassionate release, or by requiring him to wait for the Warden to respond to his most recent request given the exigency of this rapidly advancing pandemic, would result in undue prejudice and would likewise render exhaustion of the FBOP administrative process both futile and inadequate.

Notwithstanding the aforementioned, as it stands, on April 29, 2020, or thereabouts, Mr. MARULANDA-TRUJILLO's unit manager, Officer Delaney, not the Warden, responded to Mr. MARULANDA-TRUJILLO'S initial administrative request for Compassionate Release by stating that as a result of the pending ICE detainer that exists Mr. MARULANDA-TRUJILLO is subject to deportation, the latter cannot be placed on home confinement.  **(Ex. C).** However, the FBOP did not find that Mr. MARULANDA-TRUJILLO was not eligible for compassionate release, nor did the FBOP indicate he could not self deport after being placed in the custody of ICE. **(Ex. C).**

The Warden has not yet responded to Mr. MARULANDA-TRUJILLO'S administrative request notwithstanding the fact that William Barr's April 3, 2020, Memo directed the FBOP to prioritize the release of the most vulnerable inmates, which would include Mr. MARULANDA-TRUJILLO. Within the FBOP Mr. MARULANDA-TRUJILLO's classification is that of a chronic care inmate with clearly sensitive medical needs.  It is very easy for the FBOP to identify through

their mode of classification which inmates are most vulnerable and release those who have a suitable release plan, however, this has apparently not yet been done in Mr. MARULANDA-TRUJILLO's prison facility in Fort Dix N.J., which was a hotbed of COVID-19 cases, as was New York, and notwithstanding the fact Mr. William Barr's directives were in place over one (1) month ago.

   **2. Mr. MARULANDA-TRUJILLO's Pending Section §3582 Motion for Compassionate Release Sets Forth Different Grounds for Relief and Additional Medical Conditions that Were Not Previously Raised in his June 2, 2019 Motion Requesting Similar Relief**

Contrary to the government's representations, Mr. MARULANDA-TRUJILLO's pending Motion for Compassionate Release does not set forth the exact medical conditions that he previously set forth in his June 2, 2019, Motion for Compassionate Release, which was denied by this Honorable Court, and the pending motion varies significantly from the prior motion in terms of underlying facts, and the requested grounds for release.

Notably, the previous Motion for Compassionate Release filed by Mr. MARULANDA-TRUJILLO suffered from a procedural deficiency in that it did not argue for compassionate release based on the second extraordinary and compelling reason, as Mr. MARULANDA-TRUJILLO did not allege his medical condition substantially diminished his ability to provide self-care within the prison environment although such was indeed the case, nor did the prior Motion for Compassionate Release allege Mr. MARULANDA-TRUJILLO was not expected to recover from his dire medical/health condition, although he is indeed not expected to recover from his current medical condition, which is effectively terminal given that he has chronic heart failure.  And, the COVID-19 pandemic combined with his pre-existing medical condition, just made Mr. MARULANDA-TRUJILLO's current medical/health condition "more likely to be terminal faster" than over a period of time.  Mr. MARULANDA-TRUJILLO's current Motion for Compassionate Release is

being brought pursuant to Title 18 U.S.C. § 3582(c)(2);(c)(3) and (c)(6), as amended by Section 603 of the First Step Act of 2018, Pub. L. No. 115-391, 132 Stat. 5194.

Second, unlike the pending Motion for Compassionate Release, the prior motion did not cite or otherwise provide this Honorable Court with any authority for the proposition that the District Court may disregard guidance provided by the Sentencing Commission where it appears that such guidance has not kept pace with statutory amendments.  Third, Mr. MARULANDA-TRUJILLO's medical condition has continued to decline, and back when his previous Motion for Compassionate Release was filed, he did not, as he does now, additionally suffer from an accumulation of water in his heart as well as in the Epicardium and/or outer surface of the myocardium, nor did he likewise have a covered and/or clogged artery.

Finally, and most importantly, back on June 2, 2019, the COVID-19 pandemic did not exist and was not a factor this Honorable Court was able to consider, or even imagine, prior to denying Mr. MARULANDA-TRUJILLO's previous Motion for Compassionate Release. Back in June 2019, Mr. MARULANDA-TRUJILLO did not fall within the high-risk class of COVID-19 morbid cases, and was not in the highest risk of death if he were to contract COVID-19, since it simply did not exist back in June 2019.

3. **Granting Mr. MARULANDA-TRUJILLOS's Motion for Compassionate Release is Consistent with the Factors Set Forth in Section 3553(a) as Existing Material Disparities in Sentences Amongst Defendant's in this District Would be Partially Reconciled**

Although the government raises concerns about avoiding unwarranted sentencing disparities, granting the pending Motion for Compassionate release would place Mr. MARULANDA-TRUJILLO in the approximate same sentencing range as the individual upon whose representations AUSA Adam Fels relied to criminally charge Mr. MARULANDA-

TRUJILLO and to likewise find Mr. MARULANDA-TRUJILLO was not eligible for safety valve because he was purportedly not being truthful about his ownership interest in a particular farm in Colombia, a horse, and a load of cocaine unrelated to the one referenced in Mr. MARULANDA-TRUJILLO's indictment.  Specifically, that individual is defendant Jaime Alberto Marin Zamora, Case No. 09-20140-CR-SEITZ, who according to the Associated Press, pled guilty in October to charges that he and others smuggled 30 tons of cocaine into the US from 1999 to 2004, utilizing planes and vessels. Despite the fact that Jaime Alberto Marin Zamora was the left hand man of Wilbur Varela, the head of one of the world's most renown drug cartels—the North Valle Cartel—and was likewise indeed the acting hitman for Wilbur Varela and the North Valle Cartel, AUSA Adam Fels permitted Jaime Alberto Marin Zamora to enter a plea agreement structured by AUSA Adam Fels, that obviously did not account for the full amount of cocaine he smuggled into the United States;  nor did said plea agreement include any enhancements  for the use of a plane during a drug trafficking crime; nor did Jaime Alberto Marin Zamora's plea agreement include any enhancements for being a leader/organizer, despite his well-known leadership role, and he was likewise not enhanced for use or threatened use of violence during a drug trafficking crime, although he is known to have been one of the acting hit men for the North Valle Cartel,  and is said to have personally killed or ordered the killing of scores of individuals. *See*  https://www.pri.org/stories/2012-03-28/colombian-drug-lord-sentenced-16-years-us-prison; **(Ex. D)**.

During the Marion Ponce Rodrigues trial, Jaime Alberto Marin Zamora admitted, and at times seemed to even tout about what an upper enchelon drug trafficker he was when he testified he (Mr. Zamora) had been a drug trafficker for 25 years **(April 30, 2012, TR at P. 95);** that he helped distribute 1,000 kilos of cocaine through air and sea destined for the United States **(April**

**30, 2012 TR at P. 96-97);** purchased false Venezuelan identification documents and many a times bribed Venezuelan authorities during and in relation to his drug trafficking ventures; **(April 30, 2012 TR at P. 121-123);** admittedly participated in drug trafficking ventures with thousands of people throughout the world, and likely more than 20,000 people. **(April 30, 2012 TR at P. 124);** and finally, according to Jaime Alberto Marin Zamora, it would take the government years of debriefings to discuss the full extent of all his criminal drug trafficking activities. **(April 30, 2012 TR at P.124).**

Jaime Alberto Marin Zamora was not originally sentenced to a term of life, or even 360 months, but rather was initially sentenced to 16 year's incarceration, followed by 5 years of supervised release, and then received two (2) reductions of sentence for cooperation pursuant to Rule 35, and despite the fact that prior to the filing of the second Motion to Reduce Sentence pursuant to Rule 35, AUSA Adam Fels knew since at least late April, 2012, that Jaime Alberto Marin Zamora had lied to the government about his own role in his criminal offense, which was completely unrelated to Mr. MARULANDA-TRUJILLO's case, and AUSA Adam Fels likewise knew Jaime Alberto Marin Zamora's name had come up during the course of an investigation into Jaime Alberto Marin Zamora's conduct of "purchasing" Rule 35's and/or information that did not originate with him, and which he would misrepresent as such, in order to fraudulently obtain a reduction of his own sentence. *See* <u>United States of America v. Mario Ponce Rodriguez</u>, Case No. 11-CR-20338-DMM-1 (SDFLA), April 30, 2012, trial transcripts; United States of America v. Luis Fernando Bertulucci Castillo, Case No. 11-20321-CR-SEITZ (SDFLA).

Based upon the foregoing, the granting of the instant motion would close a gap and correct a sentencing disparity amongst criminal defendants created by the government's own choice to minimize the known criminal conduct of some of the most dangerous and feared criminal

defendants prosecuted in the Southern District of Florida, and withhold the truth from the District Courts.  Mr. MARULANDA-TRUJILLO is not even the sole on the bottom of Jaime Alberto Marin Zamora's shoe, yet he received a sentence of 210 months, which is greater than the term of incarceration to which  Jaime Alberto Marin Zamora, who was sentenced to 195 months.

   Mr. MARULANDA-TRUJILLO has no history of violence to speak of, and no other criminal convictions. Unlike Jaime Alberto Marin Zamora, who is a well-known Sicario that killed or ordered the killing of scores of innocent individuals, and who was released years ago despite the danger he poses to society and despite the fact he allegedly continued to engage in criminal conduct after he entered into his plea and cooperation agreement with the government, Mr. MARULANDA-TRUJILLO does not pose a physical danger to anyone, and there is no likelihood of recidivism given that Mr. MARULANDA-TRUJILLO has accepted full responsibility for his criminal conduct, has indeed learned his lesson, is 68 years of age, and has already served an extended prison term of approximately more than eight (8) years while seriously sick and infirm.

WHEREFORE, VICENTE MARULANDA-TRUJILLO, respectfully requests this Honorable Court to grant the instant motion and re-sentence Mr. MARULANDA-TRUJILLO to a sentence of time served, and allow him to go to the custody of ICE, and he will thereafter follow the detailed release plan set forth *supra.*.

Respectfully submitted,

*/s/ Alvin Entin*

Alvin Entin
Florida Bar No. 127027
Entin Law Group, P. A.
633 S Andrews Ave Ste 500
Fort Lauderdale, FL 33301
Tel. Office: **954-761-7201**

Email: **aentin@hotmail.com**

### CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on May 7, 2020, I **DID** present the foregoing to the Clerk of the Court for filing and uploading to the CM/ECF system but conveyed a copy via email to the Assistant United States Attorney's Office. A notice of electronic filing will be sent to the corresponding parties.

By: */s/ Alvin Entin*
Alvin Ernest Entin
Florida Bar No. 127027
Entin Law Group, P. A.
633 S Andrews Ave Ste 500
Fort Lauderdale, FL 33301
Tel. Office: **954-761-7201**
Email: **aentin@hotmail.com**