**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**CASE NO. 11-20349-CR-UNGARO**

**UNITED STATES OF AMERICA,**

**v.**

**FERNANDO VICENTE MARULANDA-TRUJILLO,**

   **Defendant.**

_____/

## GOVERNMENT'S RESPONSE TO DEFENDANT'S
## RENEWED MOTION FOR COMPASSIONATE RELEASE

The United States of America, by and through the undersigned Assistant United States Attorneys, hereby responds to defendant Fernando Vicente Marulanda-Trujillo's Renewed Motion for Compassionate Release (the "Renewed Motion") (DE 81).   The Defendant has a pending appeal of his first compassionate release motion and so the Court lacks jurisdiction over the present claim.   Jurisdiction notwithstanding, the Defendant's Renewed Motion also fails on the merits because the 3553(a) factors strongly weigh against extinguishing six (6) years of his sentence. Furthermore, because the Defendant tested positive for COVID-19 on December 12, 2020, even if the Court were to grant his Renewed Motion, he should not be released to the public prior to testing negative for the virus.   Finally, the Defendant was paroled into the United States for purposes of this prosecution and so, following his release from federal custody, he would be transferred to immigration custody.   He has not explained why immigration custody would be preferable to his current placement.   For the foregoing reasons, the Court should deny the Defendant's Renewed Motion.

## BACKGROUND AND ARGUMENT SUMMARY

On February 28, 2012, the Defendant pleaded guilty to conspiracy to distribute five

kilograms or more of cocaine, knowing that the controlled substance would be unlawfully imported illegally into the United States. As part of his plea, the Defendant admitted that he had participated in a 500-kilogram, multi-national drug trafficking conspiracy (Presentence Investigation Report ("PSI") at ¶ 11). On July 20, 2012, the Court sentenced the Defendant to 210 months' imprisonment (DE 70). The Court declined to apply safety valve because of the Defendant's misrepresentations and witness tampering (DE 43: 11-13).[1] To date, the Defendant has served approximately 107 months of his 210-month sentence and is scheduled to be released on December 11, 2026.[2]

Following imposition of his sentence, the Defendant unsuccessfully appealed his conviction and sentence (DE 50). Since then, he has unsuccessfully moved the Court to reduce his sentence four times (DE 52; DE 57; DE 62; DE 81). The most recent three motions for a sentence reduction were based on the Defendant's claimed health issues.

On April 24, 2020, the Defendant filed his third motion for early termination of his sentence (DE 62). The Motion repeated the arguments under the previous Section 3582 motion, claiming that his medical history constituted "extraordinary and compelling reasons" for release. The Court denied the Motion, concluding that he had not satisfied this high threshold for relief (DE 68). The Defendant appealed that decision, and the appeal remains pending before the Eleventh Circuit (Case No. 20-12218-B).[3]

On December 4, 2020, the Defendant filed the instant Renewed Motion, claiming that he

---

[1] In an effort to convince the United States and the Court of his truthfulness, the Defendant took a polygraph test. The test ultimately undercut his claim, however, because he failed the two questions related to (1) his role in the conspiracy; and (2) whether he had directed another person to lie to authorities on his behalf (DE 43: 4, 13).

[2] See BOP Inmate Locator, https://www.bop.gov/inmateloc/. Based on the release date listed on the BOP website (December 11, 2026), which is 178 months from the date of arrest (January 12, 2012), the Defendant is already projected to receive a substantial reduction to his sentence due to good-time credits.

[3] Defendant's corrected Appellant's brief was filed on November 20, 2020, and the appendix was filed on December 4, 2020.

requires emergency heart surgery and that the Bureau of Prisons ("BOP") is ill-equipped to safeguard his health, particularly during the COVID-19 pandemic (Renewed Motion at 2, 8).   Due to the Defendant's pending appeal before the Eleventh Circuit, the Court lacks jurisdiction to grant the requested relief.   Even assuming that the Court retained jurisdiction over the Renewed Motion, the Defendant has failed to satisfy the requirements for compassionate release pursuant to Section 3582 because the Section 3553(a) factors vie against his release.   The Defendant was the primary investor in a 500-kilogram drug conspiracy, and he sought to escape justice by getting a cooperator to lie on his behalf.[4]   Finally, although the Defendant tested positive for COVID-19, BOP officials inform that he does not have a fever and has not required any COVID-specific treatment.   If the Court were to grant the Defendant's requested compassionate release, he should nevertheless remain in custody until he tests negative for the virus and is no longer a risk of transmission.

For the foregoing reasons, the Defendant's Renewed Motion should be denied.

## ARGUMENT

**I.      The Court lacks jurisdiction to grant the Defendant's Renewed Motion in light of the Defendant's pending appeal before the Eleventh Circuit Court of Appeals.**

Where a defendant challenges the length of his sentence, or, as in this case, the denial of compassionate release, the length of the sentence is directly involved in the appeal.   Accordingly, as acknowledged by other courts who have addressed this issue, the district court is divested of its ability to reduce the defendant's sentence in response to a compassionate release motion.   *See e.g.*, *United States v. Utsick*, Case No. 10-cr-20242-CMA, D.E. 351 (S.D. Fla. Nov. 2, 2020) (citing cases); *Untied States v. Melkonyan*, 2020 WL 2128591 (E.D. Ca. May 5, 2020); *United States v. Skelos*, 2020 WL 2508739 (S.D.N.Y. May 15, 2020) ("Defendant's pending appeal deprives this

---

[4]  This issue was discussed at length at the Defendant's sentencing hearing, the transcript of which appears to be sealed. A copy of the transcript (DE 41) will be provided to the Court upon request.

Court of jurisdiction to grant his motion for compassionate release."). Accordingly, the Defendant's Renewed Motion should be denied without prejudice.

**II.      Defendant's claims do not warrant relief under Section 3582(c)(1)(A).**

Section 3582(c)(1)(A) permits the court to modify a term of imprisonment "if, after considering the factors set forth in 18 U.S.C § 3553(a)," it finds that "extraordinary and compelling reasons warrant such a reduction," provided that "such a reduction is consistent with applicable policy statements issued by the Sentencing Commission." 18 U.S.C. § 3582(c)(1)(A). Furthermore, the Defendant must establish that he is not a danger to the community. The Defendant bears the burden of establishing that compassionate release is warranted. *Cf. United States v. Hamilton*, 715 F.3d 328, 337 (11th Cir. 2013). The relevant policy statements issued by the Sentencing Commission are set forth in Application Note 1 to the U.S. Sentencing Guidelines Manual, which explains the circumstances in which "extraordinary and compelling reasons" exist. U.S.S.G. § 1B1.13, app. n. 1. Extraordinary and compelling reasons are defined as: (1) a terminal illness or condition or cognitive impairment that substantially diminishes a defendant's ability to provide self-care, *id.* app. n. 1(A); (2) for a defendant who is 65 or older, a "serious deterioration in physical or mental health because of the aging process," *id.* app. n. 1(B); (3) exceptional family circumstances, *id.* app. n. 1(C); and (4) an alternative compelling reason, as determined by the BOP, *id.* app. n. 1(D).

The Defendant argues that the conditions at Fort Dix FCI, coupled with his medical history, satisfy the "extraordinary and compelling reasons" requirement. As an initial matter, the Defendant claims that he requires immediate heart surgery to alleviate two clogged arteries. The medical records received from Fort Dix, which will be provided to the Court upon request, do not reference any need for immediate heart surgery, contrary to Defendant's claims. Furthermore,

representatives from the BOP have confirmed that the Defendant does not require emergency heart surgery.   Instead, the recommendation of prison medical staff is that he should be treated medically unless he becomes symptomatic, at which he would be sent to an outside hospital for treatment.   Additionally, the Defendant claims he needs emergency gallbladder surgery, but that is also not supported by the record.   The Defendant was admitted to a civilian hospital for gallbladder issues, but these were treated medically through antibiotics.   Additionally, the Defendant is followed by cardiology on a monthly basis to monitor any deterioration of his medical condition.   Although the Defendant does not require emergency heart or gallbladder surgery, it is the government's position that his existing heart problems and obesity, both of which are risk factors for COVID-19 complications, constitute "extraordinary and compelling" reasons for release.   Simply satisfying this preliminary requirement, however, does not conclude the Court's inquiry.   Because the Defendant cannot establish that the Section 3553(a) factors weigh in favor or his release, his Renewed Motion should be denied.

The Defendant has served just 107 months of his original 210-month sentence, which constitutes less than the mandatory-minimum sentence for his offense.   His co-conspirators each received significant sentences, which were not reduced due to the pandemic.   Specifically, co-conspirator Orlando Fernandez-Barrero (Case No. 10-20587-Graham) was sentenced to 141 months' imprisonment.   Due to this defendant's extraordinary cooperation, the sentence was reduced to 117 months.   Taking into account good-time credits, Fernandez-Barrero served his full sentence, meaning he received no early release due to the coronavirus, despite having served some portion of his time during the pandemic.   Similarly, Jaime Alberto Marin-Zamora, who was also charged under a separate case number (No. 09-20140-Seitz) was sentenced to 195 months' imprisonment, which was later reduced to 115 months due to substantial cooperation.   Neither of

these co-conspirators received any sentencing reduction due to factors unrelated to their conduct or cooperation. The need to protect against unwarranted sentencing disparities weighs against granting the Renewed Motion for immediate release, particularly given that the Defendant was sentenced to a greater sentence than either of these co-conspirators.

More generally, courts considering release motions from similarly situated defendants have concluded that no relief is warranted. In *Untied States v. Rodriguez-Orejuela*, an 81-year old defendant sought compassionate release based on his advanced age, his significant health impairments (including cancer and a prior heart attack that required placement of a pacemaker), and the COVID-19 pandemic. *United States v. Rodriguez-Orejuela*, 457 F. Supp. 3d 1275, 1285 (S.D. Fla. 2020). In denying the motion, the Court correctly observed that a district court is not required to reduce a sentence on compassionate release grounds, even if a prisoner qualifies for such a reduction based on his medical condition. *Rodriguez-Orejuela*, 457 F. Supp. 3d at 1285. The Court emphasized the nature of defendant's offense—he was one of the leaders of a multi-thousand kilogram cocaine trafficking conspiracy. The Court further explained that the Defendant's trafficking in massive quantities of cocaine "cannot be emphasized enough, . . . [t]he Court can only imagine the far-reaching, destructive effects of this much cocaine in the United States." *Id.* The Court also noted that releasing the defendant after he served less than 20 years for his crimes would "diminish public respect for the law." *Id.*

Likewise, in *United States v. Bell*, No. 18-CR-60115-BB-4, 2020 WL 4217724, at *1 (S.D. Fla. July 23, 2020), the Court denied a 63-year old defendant's motion for compassionate release, which was based on the defendant's medical history, including a heart attack and stroke, as well as the COVID-19 pandemic. The court explained that the Section 3553(a) factors did not support the defendant's release, particularly given that the defendant had served just 18 of his 60-month

6

sentence.   In this case, the Defendant has served just 107 of his original 210-month sentence, slightly more than 50% of his sentence.

In *United States v. Stuyeisant*, 454 F. Supp. 3d 1236, 1238 (S.D. Fla. 2020), the Court similarly rejected a defendant's compassionate release motion, which was based on his terminal liver disease as well as the coronavirus pandemic.   The Court concluded that these factors, which included the application of a 20-year statutory mandatory minimum sentence, counseled against a sentencing reduction.   *Stuyeisant*, 454. F. Supp. 3d, at 1239.

These cases highlight the importance of examining Section 3553(a) factors such as (1) the need to promote respect for the law and (2) the need for the sentence to reflect the nature of the offense.   Additionally, they reflect courts' concerns that compassionate release should not amount to a "get out of jail free card," largely extinguishing substantial criminal sentences for reasons unrelated to the Defendant's cooperation.   *United States v. Esformes*, No. 16-20549-CR-Scola (S.D. Fla. Apr. 9, 2020).   In this case, the Defendant was involved in trafficking hundreds of kilograms of cocaine into the United States.   In an effort to avoid punishment, he attempted to persuade a co-conspirator to lie to the United States.   The nature of the lie is also relevant—the co-conspirator had information relevant to the Defendant's involvement in other drug-trafficking efforts (DE 41:4-5; 8-9).

As previously mentioned, the nature of the drug conspiracy in itself warrants a significant punishment under sentencing factor 3553(a)(1).   But another aspect of Factor 3553(a)(1) also warrants consideration: the Defendant's own characteristics.   While some individuals— particularly those charged with maritime smuggling under Title 46 of the United States Code— participate in large-scale drug transport due to crushing economic circumstances, that mitigating factor does not apply to the Defendant.   He was quite well off in his home country of Colombia,

as he and his family owned four ranches with annual revenues of 600 million Colombian pesos (the equivalent of $334,000 at the time) (PSI ¶ 50).   As of the time of sentencing, the Defendant's total reported assets were just under $3 million dollars (PSI ¶ 51).   In brief, the Defendant's participation in this large-scale conspiracy was as gratuitous as it was dangerous.   As a result, strong punishment is necessary to promote the goals outlined in Section 3553(a).

For the foregoing reasons, relief under 3582(c)(1)(A)(i) is not appropriate.

### III.    Conditions at Fort Dix FCI and Defendant's lack of a viable release plan.

As of December 18, 2020, Fort Dix FCI, the institution where the Defendant is incarcerated, has reported 15 inmates and 47 staff members testing positive for the novel coronavirus, with a total of 357 inmates and 6 staff members having recovered from the virus and no casualties.[5]   As noted in the government's prior response, the facility has undertaken a number of operational modifications geared toward limiting the spread of the virus.[6]   The Defendant asserts that Fort Dix is presently in the middle of a COVID-19 outbreak.   The Renewed Motion does not supply any reliable evidence for this claim, which is clearly at odds with the statistics reported by the Bureau of Prisons ("BOP") in its COVID-19 response page.

Additionally, the Renewed Motion relies on court filings (but does not supply case numbers or copies of the filings) from two inmates who have submitted motions for release.   In addition to suffering from obvious reliability issues, even taken at face value, these statements describe situations that are easily distinguishable from the Defendant's circumstances.   In one quoted statement, a 40-year-old inmate complains that he did not receive adequate medical attention while housed at Fort Fix FCI.   The statement lacks sufficient detail to verify this information, however,

---

[5] Bureau of Prisons, Covid-19 Index, https://www.bop.gov/coronavirus/index.jsp (April 30, 2020).
[6] As reported on Facility's official website, *see* https://www.bop.gov/locations/institutions/ftd/.   Additional measures taken by the Bureau of Prisons Covid-19 are summarized in the following Action Plan: https://www.bop.gov/resources/news/20200313_covid-19.jsp

and there is no detail as to the nature of the inmate's symptoms.   Not only does this statement fall well short of establishing insufficient medical care as to the *Defendant*, it also fails to account for the considerable medical attention the Defendant has received to date.   As the Defendant acknowledges, in the past, when the Defendant has required medical attention beyond the scope available on-site, he has been transferred to a civilian hospital to receive treatment.   When the Defendant tested positive for COVID-19, he was also transferred to a civilian hospital, St. Francis Medical Center, in the event he required more intensive medical attention.   He ultimately did not require COVID-19 specific treatment, and has now returned to Fort Dix FCI.   *See* Exhibit 1 (December 16 Medical Report).

Moreover, to the extent the Defendant argues that he is receiving inadequate medical care at Fort Dix, a claim which is belied by the defendant's medical records, there are other legal avenues for raising such claims, such as a 1983 suit.   The appropriate remedy, in that case, would be to compel adequate treatment, not release from prison in defiance of the Section 3553(a) factors under Section 3582.

Finally, the Renewed Order does not contain a release plan for the Defendant.   Given that he lacks status in the United States, and therefore is subject to deportation after his release, he would likely be transferred to a detention center pending his repatriation (PSI ¶ 40).   The Defendant has supplied no reasons why immigration custody would be preferable to federal custody, nor does he explain how those conditions would reduce his risk of contracting the virus relative to those at Fort Dix FCI.   Moreover, while his transfer to immigration custody and subsequent deportation may benefit him—by halving his sentence—it would needlessly put other people at risk, including the BOP officials processing his transfer to immigration custody and the

immigration officials processing his transfer.

  WHEREFORE, the Government respectfully requests that this Court deny the Defendant's

motion for compassionate release.

         Respectfully submitted,

         ARIANA FAJARDO ORSHAN
         UNITED STATES ATTORNEY

       By: */s/Yeney Hernandez*
          Yeney Hernandez
          Assistant United States Attorney
          Court ID No. A5502300
          99 N.E. 4th Street, Suite 700
          Miami, FL 33132
          Tel# (305) 961-9277
          Email: yeney.hernandez@usdoj.gov

## <u>CERTIFICATE OF SERVICE</u>

**I HEREBY CERTIFY** that on December 18, 2020, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF.

*/s/Yeney Hernandez*
Yeney Hernandez
Assistant United States Attorney